**In re Anonymous No. 47 D.B. 86**

Disciplinary Board Docket No. 47 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

ECKELL, *Member,* March 17, 1992—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

The petitioner, [ ], was disbarred by the Supreme Court, on consent, by order dated August 8, 1986.

The misconduct which led to petitioner's disbarment involved conspiracy with a bank officer, misapplication of bank funds, filing false statements, and false loan applications resulting in the misuse of more than $500,000 deceitfully obtained from [A] Bank of [ ]. An information was issued to no. [ ] in the case of *United States v. [Petitioner]*, U.S. District Court for the District of [ ].

On June 28, 1991, a petition for reinstatement was filed.

A reinstatement hearing was held before Hearing Committee [ ] on October 7, 1991. The Hearing Committee was comprised of [ ], chairperson, [ ] and [ ].

On November 4, 1991, the Hearing Committee filed its report recommending reinstatement. No opposition to that recommendation was lodged by the Office of Disciplinary Counsel.

The matter was adjudicated at the December 1991 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner, [ ], was admitted to the bar of the Supreme Court of Pennsylvania in October 1966, following his graduation from [ ] University Law School in June 1966.

(2) [Petitioner] was engaged in the private practice of law from 1966 until his resignation from the bar on July 16, 1986.

(3) Pursuant to this resignation, the Supreme Court disbarred [petitioner] by order of August 8, 1986.

(4) Petitioner's resignation and disbarment were based on his conviction of bank fraud in the U.S. District Court for the District of [ ].

(5) Petitioner's conviction resulted from his plea of guilty to an information charging him with conspiring with a bank officer in the misapplication of bank funds by making fraudulent loan applications to the [A] Bank of [ ].

(6) The total loss caused to the bank by petitioner's offense was $500,000, which was reimbursed to the

bank by its bonding company, [B] Insurance Co. of [ ].

(7) Petitioner's restitution obligation to the bonding company was discharged in bankruptcy with the agreement of [B] Insurance in return for petitioner's cooperation in an investigation involving his co-defendant.

(8) The conduct on which petitioner's conviction was based occurred between November 1982, and December 1983.

(9) During the period from 1979 through June 1985, petitioner was suffering from a severe addiction to cocaine, and to prescribed tranquilizers and sleeping pills.

(10) Petitioner entered the [ ] Rehabilitation Program at the Institute of the [ ] Hospital on June 3, 1985, and successfully completed its 28-day program.

(11) Following his plea, petitioner was sentenced by the Honorable [C] in the U.S. District Court to imprisonment for one year. Judge [C] subsequently reduced petitioner's term to six months, which petitioner began serving on July 28, 1986, and completed in January 1987.

(12) From June 1985 to date, petitioner has been drug-free and sober, and has been a regular and active participant in both AA and NA recovery programs and the [ ] Bar Association lawyers' recovery meeting.

(13) Petitioner's attending physician at the Institute of the [ ] Hospital, Dr. [D], a psychiatrist in practice for over 20 years, and associate professor of psychiatry at the Medical School of the University of [ ], testified that in his medical opinion, [petitioner's] mental and emotional condition in 1982 and 1983, at the time of his offenses as well as when Dr. [D] first encountered

him in the hospital in 1985, was so adversely affected by his addiction and chronic abuse of drugs that he was unable to appreciate reality with accuracy, his judgment was seriously impaired, and he was unable to avoid the addictive use of drugs.

(14) Dr. [D's] medical opinion was that petitioner's addiction was a substantial contributing factor to the misconduct which led to his conviction. *Office of Disciplinary Counsel v. Braun*, 520 Pa. 157, 553 A.2d 894 (1989). Dr. [D] also expressed the belief that, in all probability, petitioner would not have engaged in criminal conduct but for the addiction, in view of his blameless prior life.

(15) In January 1990, petitioner was diagnosed as HIV-positive and since that time has become intolerant to some of the prescribed medications, resulting in anemia, requiring blood transfusions. The prognosis given by his physician as of January 1990, is for a life expectancy of two to five years.

(16) Witnesses called by petitioner, including his mother, three members of the [ ] bar and a former employer, all testified to petitioner's complete change in attitude and lifestyle, his personal, moral as well as medical rehabilitation following treatment at the Institute of the [ ] Hospital in 1985 and persisting through the present time.

. (17) Petitioner's witnesses testified without contradiction that petitioner's readmission would not be subversive of the reputation of the bar and that petitioner possessed the moral and intellectual qualifications required for readmission to the bar.

(18) Petitioner assured the Hearing Committee that he does not intend to return to private practice but to do pro bono work in an AIDS Law Project under supervision.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The sole issue before the Disciplinary Board is whether petitioner's request for readmission to the Pennsylvania bar should be granted. The inquiry into petitioner's fitness for reinstatement is a two-step process, the first being an analysis of the *"Keller* threshold" and the second, whether petitioner possesses the moral qualifications and learning in the law necessary to merit readmission to the bar.

### A.  *The* Keller *Threshold*

In *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986), the Pennsylvania Supreme Court established a threshold issue in cases where re-

instatement is sought by a disbarred attorney, which requires the court to determine:

"[W]hether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon 'the integrity and standing of the bar or the administration of justice nor subversive of the public interest.' Pa.R.D.E. 281(c)(3)(i)." *Keller*, 506 A.2d at 875. (footnote omitted)

By this language, the court has required all Hearing Committees and the Disciplinary Board to first focus on the impact of the petitioner's transgressions upon the system to determine whether his reinstatement now could be accepted without additional insult or further detriment to the integrity of the bar or the administration of justice. *In re Anonymous 26 and 32 D.B. 73*, 45 D.&C.3d 180 (1986); *In re Anonymous 4 D.B. 76*, 45 D.&C.3d 111 (1986).

It is evident from a review of other Pennsylvania cases discussing the *Keller* issue that petitioner's misconduct is not so egregious a breach of trust or repugnant to the integrity of the bar or public interest as to obviate his possible reinstatement. See *Office of Disciplinary Counsel v. [E]*, 26 D.B. 81 (attorney disbarred for delivery of bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official subsequently reinstated); *In re [F]*, 49 D.&C.3d 198 (1988) (attorney reinstated after numerous convictions for making material untrue statements to the Office of Housing and Urban Development, fraudulent lot sales, and mail fraud); *In re [G]*, 67 D.B.

81 (attorney who converted client funds, failed to maintain proper escrow accounts, and forged insurance releases readmitted in light of meaningful rehabilitation and recovery from alcoholism); *In re [H]*, 32 D.B. 83 (attorney who stole client funds and was convicted of two counts of theft reinstated based on successful participation in qualitative rehabilitation and recovery from substance addictions during period of disbarment.)

The reinstatement cases since the court's *Keller* opinion make it clear that the misconduct involved in petitioner's conviction is not, by comparison, so egregious to cases decided since that time, including *[E]*, *[I]*, *[F]*, *[G]* and *[H]* involving substantial forgeries, thefts and briberies of public officials as to preclude consideration of the petitioner's application in light of his conduct at the time of the misconduct, the fact that it occurred in 1982 and 1983, his prodigious and successful rehabilitative efforts (*[G]*, *supra; [H], supra),* and the fact that he has maintained sobriety and been drug-free for over six years since his hospitalization in June 1985, in addition to the uncontradicted, positive evidence of current good character and good conduct. See *[J], supra; [F], supra.*

## B. *Requisite Moral Character*

The second point of inquiry is whether petitioner possesses the moral character necessary to resume the practice of law in the Commonwealth of Pennsylvania and required by Rule 218(c)(3)(i), Pa.R.D.E. The petitioner bears the burden of proving his moral fitness through the presentation of testimony. *Office of Disciplinary Counsel v. [J]*, 4 and 35 D.B. 79.

Petitioner has presented favorable character testimony similar to that presented in the [*F*] case from numerous witnesses and has amply demonstrated his wholehearted commitment to rehabilitation. It is important to note that the Office of Disciplinary Counsel has not objected to petitioner's reinstatement and ODC concedes that petitioner has met his burden of proof in that regard. Petitioner has also presented noncontroverted evidence that he has kept abreast of the law and possesses the requisite learning in the law necessary as a prerequisite to reinstatement. (Rule 218(c)(3)(i), Pa.R.D.E.) The board, therefore, concludes that petitioner possesses the requisite intellectual moral qualifications to resume the practice of law.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

## ORDER

And now, March 17, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated December 26, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.